In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-2125

TEVA PHARMACEUTICALS USA, INC.,

*Plaintiff-Appellant*,

*v.*

ELI LILLY AND COMPANY,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:24-cv-02008-MPB-TAB — **Matthew P. Brookman**, *Judge*.

ARGUED FEBRUARY 11, 2026 — DECIDED JULY 13, 2026

Before HAMILTON, JACKSON-AKIWUMI, and KOLAR, *Circuit Judges*.

HAMILTON, *Circuit Judge*. A generic drug manufacturer sued a brand-name manufacturer for violating a settlement agreement from an earlier lawsuit. The brand-name manufacturer moved to dismiss, arguing that the agreement had expired before the alleged breaches. The district court granted dismissal. We reverse and remand. The generic manufacturer has plausibly alleged breaches of contract terms that were still

in effect. Its complaint and briefing did not need to specify the agreement's termination date more precisely.

I.   *Factual Allegations and Procedural History*

We review de novo a district court's decision to dismiss on the pleadings. *Ratfield v. U.S. Drug Testing Laboratories, Inc.*, 140 F.4th 849, 851 (7th Cir. 2025). We accept as true all the well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Id.* at 851–52. We may also consider documents attached to the complaint as part of the pleadings, and we do so frequently in contract disputes like this one. Fed. R. Civ. P. 10(c); see, e.g., *Barwin v. Village of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (employment agreement attached to complaint). The pleadings must "contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Flores v. City of South Bend*, 997 F.3d 725, 728–29 (7th Cir. 2021), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.   *The 2016 Lawsuit*

This lawsuit begins where another one ended. In 2016, Eli Lilly and Company sued Teva Pharmaceuticals USA under the Hatch-Waxman Act. Lilly asserted that Teva had infringed several patents that covered Lilly's drug Forteo, a treatment for osteoporosis. *Eli Lilly & Co. v. Teva Pharmaceuticals USA, Inc.*, No. 16-cv-596 (S.D. Ind.). Teva had filed with the Food and Drug Administration (FDA) an Abbreviated New Drug Application for a generic equivalent of Forteo. In so doing, Teva followed a path charted by the Hatch-Waxman Act, a federal statute that allows generic manufacturers like Teva to create and market their own versions of a patented drug "by allowing the generic to piggyback on the [brand-name manu-

facturer's] approval efforts." *FTC v. Actavis, Inc.*, 570 U.S. 136, 142 (2013). In this case, Teva had filed a "paragraph IV certification," where it certified that any listed, relevant patent for the Forteo drug "is invalid or will not be infringed by the manufacture, use, or sale" of the generic equivalent of Forteo. 21 U.S.C. § 355(j)(2)(A)(vii)(IV). A paragraph IV certification counts as "an act of infringement" under the patent statute and exposes the generic manufacturer to an infringement suit by the patent holder. *Caraco Pharmaceutical Laboratories, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 407 (2012), citing 35 U.S.C. § 271(e)(2)(A); see also *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. —, —, 146 S. Ct. 1391, 1396–97 (2026) (summarizing process).

The Hatch-Waxman Act offers generic manufacturers powerful incentives to take this risk. If the generic manufacturer wins the infringement suit (or the brand-name manufacturer declines to sue the first-filing applicant), the FDA will grant that generic drug 180 days of marketing exclusivity—that is, 180 days in which no other generic competitor can enter the market. *Actavis*, 570 U.S. at 143–44, citing 21 U.S.C. § 355(j)(5)(B)(iv); see also C. Scott Hemphill, *Paying for Delay: Pharmaceutical Patent Settlement as a Regulatory Design Problem*, 81 N.Y.U. L. Rev. 1553, 1578–79 (2006) (describing other ways in which the generic manufacturer could receive exclusivity). During that time, the generic manufacturer can typically undercut the brand-name manufacturer's prices but need not price at even lower levels expected in a market with several generic competitors. See C. Scott Hemphill & Mark A. Lemley, *Earning Exclusivity: Generic Drug Incentives and the Hatch-Waxman Act*, 77 Antitrust L.J. 947, 951–55 (2011). The statute thus encourages generic manufacturers to press sound challenges to shaky patents. *Id.* at 947.

Two years after Lilly sued Teva, in January 2018, the parties reached a settlement agreement. The agreement governed six patents related to the Forteo drug.[1] In broad terms, the deal required Teva not to sell a generic version of Forteo in the United States until a defined "Entry Date" of no later than August 12, 2019. In return, and in the provision at the center of this lawsuit, Lilly covenanted that it would not "take any action … to prevent or delay the approval, launch, [or] manufacture" in the United States of Teva's generic drug.

Lilly also granted Teva "a royalty-free and fully paid-up, non-exclusive … right and license … to the [Forteo patents] to make, have made, use, sell, offer to sell, import, and distribute [Teva's] Product in or for the United States" as of the Entry Date. As part of the license, Lilly promised to "waive any regulatory … exclusivities necessary to effectuate the license as of the Entry Date." So that Teva could fully make use of the license, the Settlement Agreement also gave Teva sixty days before the Entry Date to accumulate inventory of the generic product and to begin some marketing. If properly used, the license promised to give Teva a headstart in the generic competition with Forteo.

The Forteo patents relevant to the Settlement Agreement had all expired by August 19, 2019. If the Entry Date was August 12, 2019 or earlier, then Teva could enter the market at least one week before any of its generic competitors. And re-

---

[1] The six patents covered by the Settlement Agreement are: U.S. Patent Nos. 6,770,623; 6,977,077; 7,144,861; 7,163,684; 7,351,414; and 7,550,434. Another patent related to Forteo, No. 7,517,334, is governed by a separate agreement not part of the current litigation. References in this opinion to the Forteo patents cover only the six patents governed by the Settlement Agreement unless otherwise specified.

member, once the FDA approved the generic, the 180-day period of exclusivity would have been available, so Teva could have kept other generic competitors out of the market during that time. Within ten days of Teva's "written request," Lilly was obliged to "provide the FDA with written confirmation of the Entry Date and the licenses, covenants and waivers herein" and to "submit to the FDA" the license agreement.

B. *This Lawsuit*

By the time the Forteo patents expired on August 19, 2019, Teva had still not entered the market as permitted under the Settlement Agreement. Several months later, in January 2020, Lilly filed a supplement to Forteo's New Drug Application for "certain efficacy-related changes to the package insert." The FDA approved Lilly's supplement on November 16, 2020. Lilly then relied on the supplement as a basis to request three additional years of regulatory exclusivity, lasting from November 16, 2020, until November 16, 2023. Those were three additional years in which no generic manufacturers, including Teva, were allowed to compete with Lilly's Forteo product. As Teva tells it, the FDA had confirmed in the summer of 2023 that Teva had "satisfied all the regulatory requirements," but Lilly's supplement kept Teva from obtaining final approval. Further, Lilly did not tell the FDA that it had waived any exclusivity with respect to Teva until just a few weeks before the exclusivity lapsed and even then only at Teva's urging. If Lilly had informed the FDA sooner, Teva alleges, it would have received final approval sooner than November 16, 2023, when Lilly's additional exclusivity expired.

In November 2024, Teva filed this lawsuit against Lilly for violating the Settlement Agreement, bringing claims for breach of contract, unjust enrichment, and tortious interfer-

ence. From Teva's perspective, Lilly was still obliged to abide by the agreement's covenants—especially that Lilly would not interfere with Teva's ability to receive approval for its generic drug and would waive any regulatory exclusivity—well after Lilly's Forteo patents had expired. By applying for the supplemental New Drug Application and obtaining additional market exclusivity, the argument goes, Lilly blocked Teva's entry into the market.

Lilly moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Assuming its alleged actions could have constituted breaches of contract, Lilly contended that the Settlement Agreement was no longer in effect at the time of any alleged breach, having expired when the Forteo patents all expired on August 19, 2019. The district court agreed. Finding reason to dismiss the other two claims as well, the district court ultimately entered judgment for defendant Lilly. *Teva Pharmaceuticals USA, Inc. v. Eli Lilly & Co.*, No. 24-cv-02008, 2025 WL 1826058 (S.D. Ind. June 30, 2025).

Teva appeals the dismissal of only the breach-of-contract claim. The issue on appeal is whether Teva plausibly alleged a breach of then-existing contractual obligations under the Settlement Agreement. The district court had jurisdiction based on the parties' different citizenships and the amount in controversy. 28 U.S.C. § 1332(a). We have appellate jurisdiction under 28 U.S.C. § 1291. Under the Settlement Agreement, Indiana substantive law applies to this dispute.

## II.  *Duration of the Settlement Agreement*

Section 5.2 of the Settlement Agreement provides that the covenants Lilly allegedly breached were effective only "as of the Settlement Effective Date of this Settlement Agreement

and thereafter during the time that this Settlement Agreement is *in effect*." (Emphasis added.) The Settlement Agreement does not specify more precisely what "in effect" means. There is no expiration or termination date listed in the Settlement Agreement, and there is no other express indication of what that date could be.

A contract like the Settlement Agreement need not spell out an end date. Contract law supplies a default rule—the contract is effective for "a reasonable time." *City of East Chicago v. East Chicago Second Century, Inc.*, 908 N.E.2d 611, 623 (Ind. 2009), citing *House of Crane Inc. v. H. Fendrich, Inc.*, 146 Ind. App. 478, 482–83, 256 N.E.2d 578, 579–80 (1970); see also *CNH Industrial N.V. v. Reese*, 583 U.S. 133, 136 (2018) (applying "ordinary principles of contract law" to interpret collective-bargaining agreement); 5 Timothy Murray, Corbin on Contracts § 24.21, at 311–12 (rev. ed. 2024) ("In holding that a contract lacking a duration term is terminable at will, courts frequently set a threshold *reasonable time* for the contract—only after the reasonable time may the termination at-will occur.") (emphasis in original); Restatement (Second) of Contracts § 204 (1981) ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court."). Under Indiana law, as elsewhere, what is reasonable is typically a question of fact that accounts for "the subject matter of the contract, the situation of the parties, and the circumstances attending performance." *Rogier v. American Testing & Engineering Corp.*, 734 N.E.2d 606, 617 (Ind. App. 2000); see 5 Corbin on Contracts, supra, § 24.21, at 310 ("[T]he standard 'reasonable time' is itself indefinite. What is reason-

able is a question of fact and a matter on which opinions will
differ.").

Based on the pleadings, the district court concluded that
the Settlement Agreement, and especially the covenants Lilly
allegedly breached, could not have had any force (or been "in
effect") after the expiration of the relevant Forteo patents. This
is because, as the district court put it, the parties were "en-
gaged in patent litigation." *Teva Pharmaceuticals*, 2025 WL
1826058, at *6. On this theory, once the patents expired on Au-
gust 19, 2019, there was no reason for the promises of the Set-
tlement Agreement to survive. By contrast, the district court
saw Teva's alternative proposal—which, to the court, implied
that the Settlement Agreement would last indefinitely—as un-
tenable, given the presumption against perpetual contracts.
*Id.*, citing *Morgan Drive Away, Inc. v. Int'l Brotherhood of Team-
sters, Chauffeurs, Warehousemen & Helpers of America*, 166 F.
Supp. 885, 890 (S.D. Ind. 1958), aff'd, 268 F.2d 871 (7th Cir.
1959).

We understand the district court's concern but respect-
fully disagree with its conclusion. At the pleadings stage,
Lilly's interpretation of the Settlement Agreement is not com-
pelled as a matter of law. Lilly's position overlooks certain
provisions of the Settlement Agreement that appear to sur-
vive August 19, 2019, including Lilly's covenant not to block
Teva's generic entry into the Forteo market. Nor do we hold
against Teva the fact that it did not offer a specific alternative
expiration date for the Settlement Agreement. That attack by
Lilly confuses the burden of persuasion on a motion to dis-
miss.

A. *Waiver*

Before we get to the merits, we take up a waiver issue. Lilly contends that Teva has waived any reliance on the background rule that a contract, otherwise silent as to its duration, is effective for a "reasonable time." According to Lilly, Teva "affirmatively argued the opposite" in the district court by asserting that the Settlement Agreement lasts in perpetuity. We disagree.

First, in the district court, Teva expressly disavowed any such "in perpetuity" reading. In a footnote to its brief, Teva told the district court that it "does not suggest that Lilly's obligations under Section 5.2(c) and (d) apply 'in perpetuity,' but they certainly continue to apply while Teva is seeking approval for and then marketing" its generic version.

Nor, to preserve its arguments, was Teva required to cite in the district court the "reasonable time" case law that it has cited on appeal. "Once a … claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). Teva had properly presented its breach-of-contract claim in the district court. Teva's position, framed as a matter of reasonable time, "is more elaborate on appeal than it was in the district court, but no rule prohibits appellate amplification of a properly preserved issue." *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015) (federal diversity case). Teva's appellate arguments were not waived.

B. *"In Effect"*

Given the way Section 5.2 of the Settlement Agreement was phrased, Lilly could prevail by showing that the only

possible "reasonable time" for the Settlement Agreement to have expired in its entirety was August 19, 2019, when the relevant patents expired. A fallback position would be to show that at least the covenants that Lilly allegedly breached had expired on August 19, 2019. We cannot say that either theory succeeds as a matter of law. The text of the Settlement Agreement itself simply does not answer these questions. Drawing all inferences for plaintiff Teva, we conclude that the Settlement Agreement as a whole, and particularly Lilly's covenants in Section 5.2, can plausibly be read to have survived the patents' expiration date.

Recall that the Settlement Agreement does not specify what it means for the contract to be "in effect." The silence is telling. When the Settlement Agreement wanted certain provisions to expire when the patents did, it said so. Section 4.1 authorized Teva's license only "through the expiration of the [Forteo patents]." When a contract "us[es] different language to address parallel issues," we generally infer that the "parties were referring to different concepts." *USA Gymnastics v. Liberty Insurance Underwriters, Inc.*, 27 F.4th 499, 524 (7th Cir. 2022) (Indiana law); see also *Collins v. University of Notre Dame Du Lac*, 929 F.3d 830, 841 (7th Cir. 2019) (Indiana law; collecting cases from several jurisdictions applying a similar principle); *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) (Illinois law); *Taracorp, Inc. v. NL Industries, Inc.*, 73 F.3d 738, 744 (7th Cir. 1996) (Illinois law).

The Settlement Agreement could and did peg certain provisions to the patents' expirations, but it did not specify any date when either the entire contract would no longer be in effect, or when the terms allegedly breached in this case would

no longer be in effect. Without a much clearer indication that the parties intended Lilly's preferred outcome, we cannot conclude on the pleadings that either the Settlement Agreement as a whole or the allegedly breached provisions lost all effect when the relevant patents expired. See *Care Group Heart Hospital, LLC v. Sawyer*, 93 N.E.3d 745, 756 (Ind. 2018) (courts do "not add tacit terms into the parties' express, agreed-upon ones"); see also *AXIS Insurance Co. v. American Specialty Insurance & Risk Services*, 111 F.4th 825, 831–32 (7th Cir. 2024) ("Indiana courts teach us not to pick up the pen ourselves when parties have stated their intentions clearly.").

In addition to the silence of the Settlement Agreement on the decisive question, at the simplest level, at least one of the provisions of the Settlement Agreement certainly appears to outlast the expiration of the Forteo patents. The parties agree that the governing-law provision is in effect even today. Dispute-resolution terms (e.g., venue terms, arbitration, or limits on consequential damages) typically are deemed to continue in effect even beyond formal termination of a contract. 13 Sarah Howard Jenkins, Corbin on Contracts, § 67.2, at 12 (rev. ed. 2003) ("Although termination and cancellation of an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the settlement of disputes or choice of law or forum selection clauses."). Section 5.2 in the Settlement Agreement refers to the agreement as a whole being "in effect," and we could infer that if any part of the Settlement Agreement was in effect, the suit could go forward.

That analysis may be too simplistic, though. Perhaps dispute-resolution terms alone might not count toward keeping

the agreement "in effect" in a relevant way.[2] Even if that is so, the Settlement Agreement imposed several important substantive obligations on Teva that surely continued after August 19, 2019, and continue even today. For example, in Sections 5.1(a) and (c), Teva covenanted not to sue Lilly (unless it is in breach) "for any claim, counterclaim, demand, cause of action, suit, damages, debt, liability, obligation, right, or set-off of any and all kind or description whatsoever" relating to, among other things, "obtaining, enforcing, challenging or defending intellectual property or rights relating to" Forteo. In Section 3.2, Teva "agree[d] not to challenge … and not to assist others, whether directly or indirectly, in challenging" the validity or infringement of Lilly's patents "in any litigation or proceeding" relating to any similar "teriparatide-containing product" like Forteo.

We think it self-evident that those covenants not to sue stayed in effect after the expiration of the Forteo patents. Sup-

---

[2] Lilly cites several cases for the proposition that some provisions may survive the termination of their respective contracts. Those cases deal largely with confidentiality and arbitration provisions, which are distinguishable from the substantive provisions in dispute here. In *Tax Track Systems Corp. v. New Investor World, Inc.*, the agreement expressly provided the confidentiality obligations would "survive any termination of the agreement." 478 F.3d 783, 786 (7th Cir. 2007) (alteration omitted). Similarly, in *Chesterfield Management, Inc. v. Cook*, the Indiana appellate court relied on a background contract rule that an arbitration clause survives termination. 655 N.E.2d 98, 102 (Ind. App. 1995), quoting *State ex rel. Ranger Fuel Corp. v. Lilly*, 165 W. Va. 98, 102, 267 S.E.2d 435, 437 (1980). The final case cited by Lilly, *Lighting Products Ltd. v. Robertson Transformer Co.*, No. 13 C 9185, 2015 WL 719521, at *5 (N.D. Ill. Feb. 17, 2015), provides little persuasive help for this appeal. It does not explain why courts must categorically exclude confidentiality obligations when determining when an entire contract has terminated.

pose the shoe were on the other foot and Teva had sued Lilly on August 20, 2019, the day after the patents expired. An antitrust suit for misuse of the Forteo patents could certainly be filed and pursued after a patent's expiration (subject to a statute of limitation). See 15 U.S.C. § 15b (barring suit "unless commenced within four years after the cause of action accrued"); see also *Teva Pharmaceuticals USA, Inc. v. Abbott Laboratories*, 580 F. Supp. 2d 345, 348, 360–63 (D. Del. 2008) (describing antitrust suit brought by Teva alleging that defendants "instituted a multi-faceted scheme … to maintain a monopoly position in the market"). The covenant not to sue would bar such a suit, but only because that covenant was then and remained still "in effect." Courts are sometimes more tolerant with a "negative promise" like a covenant not to sue as being subject to an implied, extended (or even "perpetual") duration. See 1 Williston on Contracts § 4:23 (4th ed. May 2026 update).

We have difficulty believing that Lilly would have accepted that Teva could bring such a suit on the theory that the Settlement Agreement's protections were no longer "in effect." Yet if Teva's covenant not to sue remained "in effect" after the patents' expiration, then the Settlement Agreement of which the covenant is a part would still have been "in effect" too. That's particularly true with respect to the key promises at the heart of the parties' compromise of the first suit, including Lilly's covenant not to obstruct Teva's entry into the Forteo market.

Lilly offers two responses. First, it contends that Teva's hypothetical suits would be obvious losers on the merits. That argument puts the cart before the horse. The fact that a claim is unlikely to succeed does not mean the claim cannot be as-

serted—or that a covenant in a settlement agreement would bar the claim in the first place. The likely outcome of a hypothetical suit does not control the "in effect" question presented here. Contracts fix expectations for parties. A party who expected not to be sued has already organized her behavior based on that promise. See *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245 (1978) ("Contracts enable individuals to order their personal and business affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them."). She would not be happy to discover that her contract had in fact failed, nor would she find comforting the prospect of winning a court battle. Nobody would bargain for such an outcome.

Second, during oral argument, Lilly proposed a distinction between the Settlement Agreement's "primary" provisions and its "ancillary" ones. On this theory, the "primary" provisions would be those dealing directly with the Forteo patents. The "ancillary" provisions would be those dealing with subjects incidental to the patents, such as confidentiality and the governing law for disputes. Lilly argues that we should treat the "primary" provisions as expiring with the patents (for example, the license agreement) even if the "ancillary" ones would have endured.

That argument also is not persuasive. First, there is no basis for it in the text of the Settlement Agreement. Section 5.2's "in effect" phrase refers to the Settlement Agreement as a whole; it does not give priority to certain provisions over others. Further, this characterization underscores the real tension in Lilly's arguments. Lilly properly conceded in oral argument that Teva's covenant not to sue is "primary." The same

would seem to apply to Lilly's covenants to clear the way for Teva to compete with Forteo.

As discussed above, some kinds of dispute-resolution provisions can and often do survive a contract's termination. See 13 Corbin on Contracts, supra, § 67.2, at 12. We see that inquiry as meaningfully different from picking and choosing which provisions are "primary" versus "ancillary." Suppose, though, we accepted Lilly's suggestion that a reasonable interpretation of Section 5.2 might find some flexibility regarding the fact that "ancillary" (or at least dispute-resolution) terms could endure longer than more substantive covenants. The fact remains that Lilly's covenant not to obstruct Teva was part of the key exchanges of performance that would need to endure past the patents' expiration for the Settlement Agreement to be meaningful for both parties.

We might understand Lilly to be arguing, as the district court concluded, that the Settlement Agreement was so fundamentally about the Forteo patents that without those patents, the Settlement Agreement could not survive. That argument, properly understood, is an argument about the "subject matter of the contract," a factor in the reasonableness inquiry. *Rogier*, 734 N.E.2d at 617. That is of course an appropriate consideration "in determining what term is reasonable in the circumstances." Restatement (Second) of Contracts § 204, comment d. As we cannot help but repeat, though, determining a "reasonable time" is a factual inquiry. Despite Lilly's framing on appeal, we must be careful not to recast reasonableness as a question of contract interpretation. *Id.* ("The process of supplying an omitted term has sometimes been disguised as a literal or a purposive reading of contract language directed to a situation other than the situation that arises. Sometimes it is

said that the search is for the term the parties would have agreed to if the question had been brought to their attention."). Because nothing in the text of the contract answers the question of reasonableness, a conclusion in Lilly's favor would require consideration of other objective manifestations of the parties' intent. It cannot be decided on the pleadings.

## C. *Pleading Standards*

We close by clarifying our application of the pleading standards set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Lilly has argued on appeal and in the district court that the case must be dismissed because Teva has presented no plausible end date for the Settlement Agreement. The district court agreed, holding that no reasonably intelligent person could have accepted the "interpretation *advanced by Teva*." *Teva Pharmaceuticals*, 2025 WL 1826058, at *6 (emphasis added). This analysis, however, misapplied the federal civil pleading standards.

On a motion to dismiss, the burden of persuasion lies with the moving party (here, Lilly) "to show entitlement to dismissal"—that is, if all the factual allegations are true and with all reasonable and favorable inferences made for the plaintiff, the complaint is still legally insufficient. *Marcure v. Lynn*, 992 F.3d 625, 627 (7th Cir. 2021); see *Brockett v. Effingham County*, 116 F.4th 680, 685 n.1 (7th Cir. 2024) ("It is the movant's burden, after all, to demonstrate an entitlement to relief on the motion to dismiss."); *Gunn v. Continental Casualty Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("It is the defendant's burden to establish the complaint's insufficiency."). If a defendant fails to carry this burden, the court should deny the motion to dismiss. See *Marcure*, 992 F.3d at 631 (reversing Rule 12(b)(6) dismissal when district court granted motion "on the sole basis that it

was unopposed"). This is why a defendant may still lose on a motion to dismiss even when a plaintiff fails to file any opposition. See *id.* at 627, 631 (unsigned filing stricken).

By contrast, at the pleadings stage, a plaintiff may not yet have all the answers. When a defendant moves to dismiss—especially on a question of fact such as reasonableness—we look in a complaint for only plausibility. See *Iqbal*, 556 U.S. at 678. We require the plaintiff to present "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). We do not ask a plaintiff to show that she will ultimately prevail. See *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011), quoting *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable ….").

Lilly has demanded more than plausibility from Teva. It wants Teva to have pinpointed an exact date, and apparently just one date, on which the contract (which is otherwise silent on the point) ended. Lilly also has demanded that Teva have done so before any discovery occurred. Because Teva did not do so, at least not satisfactorily in Lilly's view, Lilly contends that we must accept its theory of the Settlement Agreement. That's a false choice. A motion to dismiss does not necessarily present an either/or, all-or-nothing inquiry. We are not limited to deciding between the parties' competing characterizations, especially when those characterizations are so preliminary. That approach may be suitable for baseball arbitration, where a ballplayer's salary is indeed decided by choosing between two proposed figures and nothing else. See generally Jeff Monhait, *Baseball Arbitration: An ADR Success*, 4 Harv. J.

Sports & Ent. L. 105 (2013). It does not govern a motion to dismiss in a federal court.

To make this point more concrete, imagine how this case could play out at trial. To win, Teva would need to establish that the relevant covenants of the Settlement Agreement were in effect at the times of the alleged breaches. *Russell v. Zimmer, Inc.*, 82 F.4th 564, 569 (7th Cir. 2023) ("Under Indiana law, a plaintiff alleging a breach of contract must show the existence of a contract, a breach, and damages."), citing *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021). On Teva's theory (at least, from what we know of it), a breach could have happened in January 2020, when, remember, Lilly submitted a supplemental New Drug Application. But at no point does Teva's success hinge on its ability to pick out one particular day on a calendar when the entire Settlement Agreement or particular provisions of it would have expired. We see no sound basis to enforce such a standard on a motion to dismiss.

In opposing the motion to dismiss, Teva did not need to take a position any more specific than that the relevant covenants were still "in effect" at the times of the alleged breaches. For the reasons we have explained, that is a reasonable reading of the Settlement Agreement. Under Section 5.2, the covenants bind Lilly only when the "Settlement Agreement is in effect." The fact that the Settlement Agreement had to have been "in effect" at the time of any alleged or proven breach is clear.

What is not clear, however, is a "reasonable time" for the contract to end. We have explained, contrary to Lilly's view, that the text of the agreement simply does not tell us whether or when the Settlement Agreement expired, or whether or when the relevant covenants expired. Those questions cannot

be resolved in Lilly's favor based solely on the text of the Settlement Agreement and the complaint.[3]

One final point. Lilly contends that it should not be blamed for Teva's delays in getting to market after the Forteo patents expired. Maybe, maybe not. As with its other arguments on appeal, Lilly has gotten ahead of itself. Lilly's argument is properly understood as an argument on the merits—for example, as to whether Lilly's actions breached the agreement at all and/or whether they caused Teva any injury. We need not and should not take up those issues now in reviewing the grant of the motion to dismiss. Those issues are separate from whether the Settlement Agreement or the relevant covenants were still "in effect."

The judgment of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

[3] Teva suggests on appeal that the Settlement Agreement might have expired in March 2025, when Lilly's '334 patent expired. For the reasons explained in the text, we need not determine whether Teva is correct on this point.